**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

RECEIPT # _____ 44563
AMOUNT $ 250.00
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY CLK. _____
DATE 5-27-05

|  |  |
|---|---|
| PASQUALE S. POLITANO, <br> **Plaintiff,** | ) <br> ) <br> ) <br> ) |
| v. | ) <br> ) **CIVIL ACTION NO.** |
| **BUILDING TECHNOLOGY** <br> **ENGINEERS, INC. and NATIONAL** <br> **CONFERENCE OF FIREMEN AND** <br> **OILERS, SEIU, LOCAL UNION NO. 3** <br> **OF BOSTON** <br> **Defendants** | ) <br> ) <br> ) 05 - 11109 WGY <br> ) <br> ) <br> ) Referred to MJ JGDein <br> ) |

## COMPLAINT

### Parties

1.  Plaintiff, Pasquale S. Politano is a resident of Revere, Massachusetts. From
    November 11, 1985 through August 17, 2004, Plaintiff was employed full-time as
    a regular employee by the Defendant Building Technology Engineers, Inc.
    Plaintiff's job title was building maintenance technician and he was assigned to
    work at the Prudential Complex in Boston. Plaintiff specialized in working on
    heating, ventilation and air conditioning systems.

2.  For more than 19 years, Plaintiff has been a dues paying member in good standing
    of the Defendant National Conference of Firemen and Oilers, SEIU, Local Union
    No. 3 of Boston (hereinafter "Local No. 3"). At all material times hereto, Local
    No. 3 has been the exclusive collective bargaining representative for certain
    facilities maintenance employees including building maintenance technicians,
    engineers, firemen, janitors and other employees. As exclusive bargaining

representative, Local No. 3 deals with grievances, labor disputes, wages and other

conditions of work and is a labor organization in an industry affecting commerce

within the meaning of the National Labor Relations Act, 29 U.S.C.A. Sections

142(1) and (2) and 185 (a).

3.     Defendant Building Technology Engineers, Inc. (hereinafter "BTE") is a

corporation organized under the laws of Massachusetts with a principal place of

business in Massachusetts at 306 Northern Avenue in Boston, Massachusetts.

BTE provides building facilities management and maintenance services to retail,

commercial, industrial and institutional business owners. BTE is an employer in

an industry affecting commerce within the meaning of the National Labor

Relations Act, 29 U.S.C.A. Sections 142(1) and 185 (a).

4.     On or about April 19, 2004, Defendants Local No. 3 and BTE signed a collective

bargaining agreement ("Agreement") under which BTE recognized Local No. 3

as the exclusive collective bargaining representative for certain full-time and part-

time employees, including building maintenance technicians, at all BTE job sites

and work sites in the New England area. Pertinent parts of the Agreement are

attached hereto as **Exhibit A.**

Jurisdiction

5.     In this case, Plaintiff seeks relief against a labor organization for breach of its

duty of fair representation; and against an employer for breach of a collective

bargaining agreement. This Court has subject matter jurisdiction under Section

301 of the Labor Management Relations Act, 29 U.S.C.A. Section 185(a); and

2

under 28 U.S.C.A. Sections 1331 and 1337, without regard to the amount in controversy.

Venue

6.    Venue is appropriate with this Court under 28 U.S.C.A. Sections 1391(a) and 1392(b) as all of the acts or events giving rise to the claims occurred within this judicial district, and each of the Defendants has a principal place of business in this judicial district. Additionally, venue is appropriate under 29 U.S.C.A. Section 185(c) as the Defendant Local No. 3 has its principal office in this judicial district and is engaged in representing members in this judicial district.

Plaintiff's Employment Termination by BTE

7.    At material times hereto, Defendant BTE provided facilities management and maintenance services at the Prudential Complex in Boston, Massachusetts pursuant to an agreement between Defendant BTE and the owner of the Prudential Complex, Boston Properties, Inc.

8.    During his 19 years employment before BTE at the Prudential Complex, Plaintiff had an excellent employment record. He was never subjected to discipline or suspension and was commended for his efforts and skills by supervisory employees over the years. Plaintiff was commended in writing as recently as March 22, 2004 by the customer, Boston Properties, Inc., for his efforts. Plaintiff's regular 40 hour work week at the Prudential Complex included Friday, Saturday and Sunday nights.

9.    On or about August 10, 2004, Plaintiff was falsely accused by a BTE site manager, Kenneth Stack, of wrongful conduct in connection with a retail tenant at

the Prudential Complex, Krispy Kreme Donuts. According to Stack, Plaintiff improperly attempted to arrange for the employees of a floor cleaning service company, Janitronics, Inc., to clean the floors in Krispy Kreme Donut's retail space. Janitronics, Inc. cleaned common area floors at the Prudential Complex, but not the floors of retail tenants. According to Stack, Plaintiff was provided with free donuts and coffee by Krispy Kreme in exchange for this effort. A copy of a letter dated August 12, 2004 from Stack to Plaintiff outlining the allegation and suspending Plaintiff with pay "until further notice" is attached hereto as **Exhibit B**.

10. Stack had been assigned by Defendant BTE as site manager of the Prudential Complex less than several months before August 12, 2004. The accusations of Stack were false. In fact, as was well known to all night shift employees at the Prudential Complex, Krispy Kreme provided free donuts and coffee to all uniformed service and maintenance night shift employees as a courtesy.

11. On or about August 17, 2004, Plaintiff was informed by Stack that he was terminated from his employment by Defendant BTE. According to Stack, the customer, Boston Properties, Inc., had requested that Plaintiff be removed from employment at the site. Notwithstanding repeated requests by Plaintiff, Defendant BTE has never provided any documentation for the customer's alleged "request".

## Count I – Breach of Collective Bargaining Agreement by BTE

12. Plaintiff thereafter contacted Local No. 3 and notified the assistant business agent that he had been discharged from his employment without proper cause in

4

violation of Article XVI of the Agreement. Plaintiff requested that Local No. 3 file a grievance on his behalf. Plaintiff was subsequently informed by Local No. 3's assistant business manager that he was considered to be "laid off" by Defendant BTE and not discharged for cause. The Agreement does not permit Defendant BTE to lay off an employee as a result of a purported "customer request" that an employee be removed from a site. The Agreement provides only that the employee can be transferred without the employee's approval if a customer requests that the employee be removed from the site. Additionally, according to the Agreement, Article XXV, Plaintiff was to be given preference in rehiring by Defendant BTE after a layoff because of his seniority.

13. Between August 17, 2004 and March of 2005, positions became available at Defendant BTE for a building maintenance technician with Plaintiff's experience. Plaintiff located these positions on his own with little or no assistance from either BTE or Local No. 3. Between November of 2004 and March of 2005, Plaintiff interviewed for several jobs with BTE supervisory personnel but was never hired. During the course of these interviews, Plaintiff was informed by a BTE supervisor that the supervisor had information that Plaintiff had been fired by BTE from the Prudential Complex. Plaintiff was not placed in any of the jobs for which he interviewed and later was informed that less senior employees had been placed on those jobs by BTE.

14. The actions of Defendant BTE constituted violations of Articles XVI and XVII of the Agreement in that Plaintiff was terminated from his job without just cause and without being notified of the reason for the discharge in writing. Defendant BTE

tried to bypass the discharge for cause provision of the Agreement by categorizing Plaintiff's discharge as a "lay off" to avoid the grievance and arbitration proceedings in Articles XVI and XVII of the Agreement.

15.    To the extent that Defendant BTE is considered to have laid off Plaintiff, Defendant BTE has violated Article XXV of the Agreement because Defendant BTE did not have the authority to lay Plaintiff off because a customer had purportedly requested a transfer (for reasons other than failure to obtain a security clearance or bonding); and also because BTE did not give preference to Plaintiff in recalling him to work based on seniority at jobs which became available at other BTE sites. BTE instead assigned less senior and less qualified employees to these jobs.

16.    As a result of Defendant BTE's violations of the Agreement, Plaintiff has been damaged by lost wages in the amount of $1,300 per week from August 17, 2004 through the present, loss of health insurance benefits and loss of other benefits including retirement benefits, totaling at least $75,000.00.

Count II – Breach of Duty of Fair Representation by Local No. 3

17.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 16 as though set forth fully within.

18.    On or about August 24, 2004, Local No. 3 filed a written grievance on Plaintiff's behalf pursuant to Article XVIII of the collective bargaining agreement. A copy of the grievance is attached hereto as **Exhibit C**. Local No. 3 also sent a letter to Defendant BTE asking for all information having to do with Plaintiff's termination or "lay off" including any requests for Plaintiff's removal from the

6

Prudential Complex by the customer, Boston Properties, Inc. Defendant BTE
failed and refused to provide documentation for the customer's purported request.

19.    Plaintiff's grievance was denied by BTE at the Step 1 and Step 2 levels under
Article XVIII of the Agreement. On October 12, 2004, a Step 3 hearing was held
at Defendant BTE's offices at 306 Northern Avenue. Michael McGloin, the
President of Emcor, Inc., BTE"s parent company, and the aforementioned site
manager, Kenneth Stack, represented BTE. The company representatives at the
Step 3 hearing said that it was the customer, Boston Properties, Inc., who
requested that the Plaintiff be removed from the site. Local No. 3 through its
assistant business representative pointed out that (1) such a purported customer
request was inconsistent with Boston Properties, Inc.'s recent commendation of
Plaintiff for excellent work on the site; and (2) under an established past practice,
such a customer request was required to be in writing. Local No. 3's assistant
business representative informed the company representative that BTE was
blackballing Plaintiff from reassignment for fabricated reasons.

20.    At the Step 3 hearing, the Company representatives promised that Plaintiff would
be reassigned to another site and it was agreed that the Step 3 grievance would be
left open until Plaintiff had a job.

21.    Thereafter, Plaintiff learned of jobs for which he was qualified and which were
available at several of Defendant BTE's sites, including, but not limited to, the
World Trade Center and Harvard University. Plaintiff applied and interviewed
for these jobs, but was not hired. Plaintiff's calls to company representatives as to
why he was not hired were not returned. Local No. 3's assistant business

7

representative informed Plaintiff that the assistant business representative's calls to Defendant BTE about its failure to rehire Plaintiff were not returned.

22.    As of late February of 2005, it was clear that Defendant BTE had no intention of rehiring Plaintiff in accordance with the seniority provisions of the Agreement. Plaintiff had been terminated from his employment without proper cause in violation of the Agreement. Defendant BTE was bypassing the Agreement's discharge for cause provision by deceptively describing Plaintiff's discharge as a lay off and thereafter refusing to call him back to available jobs, notwithstanding Plaintiff's seniority.

23.    In late February of 2005, Plaintiff requested that Local No. 3 bring the matter to arbitration pursuant to Article XIX of the Agreement.

24.    Plaintiff was informed that arbitration would require the approval of Local No. 3's executive board. Plaintiff met with the executive board at Local No. 3's union hall on March 2, 2005, explained his situation, and requested that the executive board authorize arbitration. Plaintiff was informed that he would receive a written notice of the Board's determination. In more than two months, Plaintiff heard nothing from the executive board. The Step 3 grievance remains unresolved and Local No. 3 is taking no action to process Plaintiff's grievance. On April 15, 2005, Plaintiff's counsel sent Local No. 3 a letter demanding that Local No. 3 commence arbitration. On May 11, 2005, Local No. 3's business agent informed Plaintiff that the executive board had decided not to arbitrate Plaintiff's grievance because he "did not have a likelihood of success at arbitration".

25.   Under the Agreement, Article XV, Plaintiff will lose his right to recall based on seniority, his credited sick leave and his seniority if he is not recalled by BTE within one year of his alleged lay off.

26.   Local No. 3, as exclusive bargaining agent, owes Plaintiff a duty of fair representation. The duty of fair representation requires Local No. 3 to serve its members interests without hostility and discrimination towards any, to exercise its discretion in good faith and honesty, and to avoid arbitrary conduct or representing its members in a perfunctory manner.

27.   Local No. 3 has breached its duty of fair representation by, inter alia, (1) failing to investigate BTE's allegations that Plaintiff acted improperly in responding to the Krispy Kreme Donuts, Janitronics incident; (2) failing to investigate or obtain documentation for BTE's allegation that the owner of the Prudential Complex had requested that Plaintiff be removed from the site; (3) failing to investigate whether BTE and/or its site manager Stack had intentionally provided false information to the owner to elicit a request from the owner to remove Plaintiff from the site; (4) failing to follow a past practice of requiring documentation from BTE for a customer's purported request to remove a Local No. 3 employee from the site; (5) failing to enforce provisions of the Agreement prohibiting discharge of covered employees without good cause and requiring that preference be given to laid off employees in recall to available jobs based on seniority; (6) failing to conclude Plaintiff's grievance for wrongful discharge at the Step 3 level; and (7) failing to commence arbitration in a timely fashion on Plaintiff's behalf to enforce the terms of the Agreement.

9

28.    Local No. 3's breach of its duty of fair representation has damaged Plaintiff in loss of past and future wages, health insurance and other employment benefits totaling at least $75,000.00, and emotional distress, as well as the costs and attorneys fees of this action.

WHEREFORE, Plaintiff requests that the Court grant Plaintiff the following relief:

1.    Order Defendant BTE to reinstate Plaintiff to his position with full back pay and back benefits;

2.    Award damages against Defendant BTE for lost past and future wages and benefits of at least $75,000.00;

3.    Order Local No. 3 to commence arbitration of Plaintiff's grievance under Article XIX of the Agreement;

4.    Award damages to Plaintiff against Defendant Local No. 3 for lost past and future wages and benefits of at least $75,000.00, and for emotional distress;

5.    Award Plaintiff the costs and reasonable attorneys' fees of this action against Defendant Local No. 3 and costs against Defendant BTE; and

6.    Award such other relief as the Court deems appropriate.

Respectfully submitted,
Pasquale S. Politano,
By his attorney,

Frank J. Teague, Esq.
Frank J. Teague & Associates
One Liberty Square
4th Floor
Boston, MA 02109
(617) 350-7700
BBO # 493780

Date: May 25, 2005

# Building Technology Engineers

*An EMCOR Company*

# AGREEMENT

## Between

## BUILDING TECHNOLOGY ENGINEERS, INC.

## And

## NATIONAL CONFERENCE OF FIREMEN AND OILERS SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL UNION NO. 3 OF BOSTON

## April 19, 2004

To

## April 22, 2007

Exhibit A

# AGREEMENT

This Agreement dated April 19,2004 is by and between BUILDING TECHNOLOGY ENGINEERS, INC., hereinafter called the Company, and the NATIONAL CONFERENCE OF FIREMEN AND OILERS, LOCAL UNION NO. 3 of BOSTON, SEIU, hereinafter called the Union. It is the desire of the Company and the Union to work together to maintain mutually satisfactory conditions of employment. To this end, the parties agree as follows.

# ARTICLE I

## RECOGNITION OF THE UNION

The Company recognizes the Union as the sole collective bargaining agency for the regular full-time employees and regular part-time employees who normally work in the classifications covered by this Agreement as listed in Article VIII, including employees at any and all job sites and work sites in the New England Area where the employer hereafter performs work covered by this agreement, subject to Article II and III.

# ARTICLE II

## RECOGNITION OF THE UNION
## AT NEW SITES

The Company agrees that if it or EMCOR Facilities Services wins the contract to perform work at a new site not listed in Exhibit A (attached hereto), and within the geographic jurisdiction of this Agreement as set forth in Article I, the following conditions shall apply regardless of whether that contract is with an existing client or not:

1.     For contracts, where there is no predecessor contractor, or where the predecessor contractor's employees are not unionized, or where the predecessor contractor's employees were represented by a union other than Local 3, but the Company is not a legal successor, as that term is defined under the National Labor Relations Act, the Company shall recognize the Union as the collective bargaining representative in the unit described above in Article I, at that site on a showing of valid authorization cards from a majority of employees in that unit. This showing shall be subject to the terms of the Neutrality Provisions of this Article set forth below in paragraph 2 of this Article. Where the Company is a legal successor, as that term is defined under the National Labor Relations Act, to a contractor that had recognized another union at a particular site, the Union shall not seek recognition from the Company at that site,

## ARTICLE XIV

## BEREAVEMENT PAY

A. In the event of a death in the employees' immediate family (father, mother, sister, brother, child, spouse, grandchildren and employee's grandparent) the employee shall be eligible for up to three (3) days off with pay.

B. In the event of the death of the employees' father-in-law, mother-in-law, sister-in-law, or brother-in-law, shall be eligible for up to two (2) days off with pay.

## ARTICLE XV

## UNIFORMS AND WORK SHOES

The Company shall furnish five (5) uniforms and (1) one three-season jacket to each regular full-time employee at the completion of his probationary period. The employee shall maintain the uniforms. The Company shall each year thereafter provide five (5) uniforms and (1) one three-season jacket for each regular full-time employee covered by this Agreement.

The Company shall provide a $125.00 safety work shoe allowance per year to each employee. Payment will be made in the week's payroll that coincides with the anniversary date of this agreement and will be treated as taxable wages. The employee shall purchase approved work shoes and wear them during all normal work hours. The employee shall be sent home without pay when not wearing work shoes. The Company recommends steel-toe work shoes or OSHA approved for the best protection.

## ARTICLE XVI

## DISCIPLINARY PROCEDURES (DISCHARGE OR SUSPENSION)

A. Should any employee covered by this Contract be subject to discipline including suspension or discharge, he or she shall be so advised in writing by his or her Supervisor and a copy of said disciplinary action shall be forwarded to the Union. Refer to the Company Employee Manual (dated 5/01 or later revision), regarding Rules of Conduct and disciplinary action. Disciplinary action shall be removed from the employees' file after one (1) year providing there is not more than one (1) disciplinary action for the same offense within one (1) year period of time, in which case the disciplinary actions shall be removed together one (1) year from the date of the later offense.

B. If the Company's Customer requires that an employee be bonded or comply with a Customer's requirement to submit to a security clearance and the bonding of that employee or the Customer's security clearance are denied, the company shall transfer the employee to another site at a similar position and similar pay, if available.

# ARTICLE XVII

## MANAGEMENT RIGHTS

A.   The management of the Company and the direction of the working force are vested solely and exclusively in the Company and shall not in any way be abridged, except as specific restrictions are set forth in this Agreement.

B.   The parties agree that the Company has the right to supervise employees, to hire employees, to promote employees, to discipline, suspend or discharge employees for proper cause, which includes, but is not limited to, misconduct, dishonesty, poor attendance, tardiness, and substandard job performance, to lay off employees for lack of work, to transfer employees, to assign employees, to determine services which employees shall perform, to direct, instruct and control employees, including, but not limited to, the determination of the number and qualification of employees to perform work, the quality of work standards and the required employee performance to meet such standards, to assign overtime, to determine job content, to combine and/or eliminate job classifications, to determine hours of work, to determine types of equipment, methods and procedures to be employed, to make and enforce reasonable rules to assure orderly and effective work and to perform all other functions in the administration, management, control and/or direction of the business.

C.   The exercise of management rights, powers and authority shall not be subject to any grievance and/or arbitration procedure, provided that the exercise of such rights, powers and authority are not in violation of the express terms of this Agreement.

# ARTICLE XVIII

## GRIEVANCE PROCEDURES

The purpose of this Article is to establish a procedure for the settlement of grievances, which involve the interpretation, and application of a specific provision of this Agreement. All such grievances shall be handled as provided in this Article.

No grievance shall be considered under the grievance procedure unless it is presented in Step One within ten (10) working days after the circumstances giving rise to the grievance first occurred. A grievance must be referred to the next step without delay, or the grievance shall be considered settled on the basis of the last answer given.

Step One:

The aggrieved employee shall be first present the grievance to his or her immediate Supervisor who is not a member of the bargaining unit. His or her Union representative shall be present at this meeting.

Page 18 of 24

If a grievance is not settled in Step One, it shall be reduced to writing and signed by the aggrieved employee and the Union Steward. The employees' Supervisor shall add this answer in writing and send the grievance to the senior management representative in the building in which the employee is working.    Within one week after receiving the written grievance, the building management representative shall confer with the Union Steward after which he or she shall give his or her answer in writing.

Step Three:

If the Grievance is not settled in Step Two, it may, at the written request of the Union to the Operations Manager, be considered at a meeting of the Operating Unit Manager (Operations Manager) and the Business Representative of the Union, or their designated representative, to be held within one week after receipt of such written request. After such meeting, the Operating Unit Manager (Operations Manager) shall give his or her answer in writing to the Business Representative.

If the nature of the grievance is such that it cannot be processed in Step One or Step Two, such grievance may be initiated in Step Three by written request setting forth the grievance by the Business Representative of the Union to the Operating Unit Manager (Operations Manager), or by the Operating Unit Manager (Operations Manager) to the Business Representative of the Union. The procedure set forth in the preceding paragraph shall then be followed.

# ARTICLE XIX

## ARBITRATION

If the grievance involving the interpretation and application of a specific provision of this Agreement has not been settled after being fully processed through the grievance procedure set forth in Article XVIII, and is not limited to such procedure, then either party may submit such grievance to arbitration by giving written notice thereof to the other not later than four (4) weeks after the completion of Step Three. The grievance shall be considered as having been settled in Step Three unless it is so submitted to arbitration within such time limit.

The choice of the arbitrator shall be by agreement of the parties. However, if such agreement has not been reached within one (1) week after the receipt of such written notice submitting the grievance to arbitration, the grievance may be referred by either party to the American Arbitration Association for the selection of an arbitrator in accordance with the rules, subject to the provisions of this Agreement. The parties shall share equally in the compensation and expenses of the arbitrator. The award of the arbitrator on any grievance properly submitted to him or her hereunder shall be final and binding upon the parties.

Each grievance shall be separately processed in any arbitration proceeding under this Article.

The arbitrator shall have no power to add to, subtract from, amend, modify, or alter any of the terms of this Agreement.

## ARTICLE XXIII

## DURATION OF AGREEMENT

This Agreement shall continue in full force and effect from April 19, 2004 to April 22, 2007, and thereafter from year to year unless ninety (90) days notice is given by either party by registered mail prior to the expiration date of desire to modify or terminate.

Such written notice shall contain therein any changes desired by the party giving the notice and conferences shall be arranged and undertaken within thirty (30) days after the service of said notice.

Notwithstanding any other provision of this Agreement, in the event that either party requests assistance from the Federal Mediation and Conciliation Service or Massachusetts Board of Conciliation and Arbitration for the purpose of mediating any dispute between the parties before or after the expiration of this Agreement, this Agreement shall continue in full force and effect; or if it has expired previously, mediation and until a new Agreement is executed.

## ARTICLE XXIV

## JURY DUTY

An employee with a minimum of four (4) months of continuous service who is required to report for jury duty on a day when otherwise scheduled to work shall be paid the difference between the amount received from the Court for such service and the amount which would have been earned for his or her regularly scheduled shift.

Company jury duty benefits shall be paid to eligible employees provided that the notice of required duty was received following employment by the Company. A certificate from the Court must be presented which shows the period of service and the amount of payment. For any period of jury service, the combined compensation received from the Court and the Company may not exceed an individual's regular rate of pay.

For employees with less than four (4) months of continuous service, the Company shall make every effort to permit the individual to take the time required to fulfill his or her jury service obligation. In such cases, compensation for the time not worked shall be limited to that received from the court.

Jury duty is not considered as time worked for purposes of computing overtime pay.

## ARTICLE XXV

## SENIORITY

The employer recognizes the principles of seniority for the employees covered by this Agreement. Seniority shall be defined as length of service in the bargaining unit from the first day of work once the employee satisfactory completes his or her probationary period and reduced by any periods of layoff or approved leaves of absence. When two or more employees have been hired on the same

Page 21 of 24

date, seniority shall be considered by the employer in a fair and equitable manner. Where qualifications such as ability and performance are relatively equal, the employer shall give preference to the most senior qualified employee. The employer shall give preference in cases of lay off, rehirings, promotions, and transfers to employees by applying the principles of seniority. No employee may be transferred without the employee's approval, unless such transfer is the result of a customer request.

A permanent full time employee with greater than thirty (30) days of continuous active service who has been laid off due to lack of work shall have the right to recall, at any of the Company's active building maintenance locations, for a period of one (1) year from the date of lay off, or length of service, whichever is less, subject to the Company's right to evaluate the applicants for ability and performance.

Such employees returning to active service following a period of lay off not exceeding fifty two (52) weeks (or length of service, whichever is less) who, in the manner prescribed by the Company and the Insurance Carrier, have elected to continue Group Insurance coverage following lay off, shall be reinstated in that coverage, if such coverage is still available to employees, on the first day of active service without serving the normal thirty (30) day waiting period.

Similarly, if an employee returns to active service following a period of layoff which does not exceed the lesser of fifty-two (52) weeks or length of service:

A. Credited sick days forfeited at the time of layoff will be reinstated.

B. Continuous service completed up through the date of layoff shall be included in the calculation of determining seniority and vacation eligibility in future years.

Under the existing non-contributory pension plan, if you terminate employment and are later rehired, your service before you terminated, shall not be disregarded if your break in service is less than your years of service, prior to the break.

Refusal to accept any offer of recall to an employee's last classification or failure to report to work within ten (10) working days of such an offer shall be considered a voluntary resignation unless said refusal is due to a hardship, communicated at the time of the employee's exit interview. It is the employee's responsibility to keep the Company informed regarding their current address, telephone number and the status of any hardships effecting recall status.

Vacancies in all classifications shall be posted for five (5) consecutive days in areas agreeable to both parties. The Company may fill the position temporarily while the vacancy is posted.

Employees are not eligible for transfer until they have six (6) months of service at a site, unless approved by the Project Manager.

## ARTICLE XXVI

## TRADE LICENSES

The Company shall reimburse employees for courses that employees are required to take in order to renew a trade license required in their present position and as currently required by law.

## ARTICLE XXVII

### LEGAL PLAN

The Company shall contribute $0.125 per hour that every full time employee works on straight time.

## ARTICLE XXVIII

### SAFETY COMMITTEE

A joint safety committee shall be established, composed of one representative of the Company and one representative of the Union, to meet monthly. The Company's representative shall be the Building Manager and the Union's representative shall be the Shop Steward, unless other representatives are specifically designated in writing. It shall be the duty of this committee to investigate all claims of unsafe working conditions submitted by the employees. The committee shall keep a record of its meetings, the claims submitted, and the action taken by the employer. Claims shall be submitted on the agreed upon "Safety Report" form.

## ARTICLE XXIX

### NON-DISCRIMINATION

The Company and the Union agree there shall be no discrimination against any employee because of race, color, religion, sex, national origin, or Union membership; and further that there shall be no discrimination against any employee due to age, disability or veterans status insofar as such is prohibited by law.

WITNESS OUR HANDS AND SEAL THIS ____ day of _____ 2004.

BUILDING TECHNOLOGY ENGINEERS, INC.

By: _____
     Philip Sayers, Vice President/General Manager

National Conference of Firemen and Oilers
AFL-CIO Local Union No. 3 of Boston

By: _____
     Michael Byrnes, Business Agent

Page 23 of 24

August 12, 2004

To: Pat Politano

From: Ken Stack

Subject: Employee Suspension

This memo serves to document the investigation being conducted concerning your role in exchanging cleaning services to Krispy Kreme in exchange for free doughnuts and coffee.

On August 10, 2004 it was reported to me that there was an incident on night-shift involving the cleaning company (Janitronics) and Krispy Kereme (a tenant of the Prudential Center/Boston Properties). The initial investigation revealed that you were having the night-shift cleaners clean Krispy Kereme's space in exchange for free doughnuts and coffee. After the nigh-shift manager for Janitronics found out about this, he put an immediate stop to this because cleaning this space is not within their scope of work and they were not insured to work in the Krispy Kreme space. You continued to pressure the night-manager to clean the space for fear of loosing the free nightly doughnuts.

Later that day, I called you at home to notify you of the accusations that are being levied against you. You responded that all of these accusations are false. You also stated that you do not even go into the store or eat their doughnuts. I then asked you if there is anything I need to know about this situation and you repeated you statement of innocence. I then told you to stay away from Krispy Kreme so that you remain clean of any possible issues that may arise while this is being investigated.

The next morning, August 11, 2004, the night manager for Krispy Kreme reported that you came to the store again last night, ignoring my instruction to stay away from the store, and continued to pressure her to give you free doughnuts and coffee.

A review of the security tapes show you walking out of the store on numerous occasions with several dozen doughnuts and trays of coffee.

In light of the information that is coming out, I hereby SUSPEND you WITH PAY until further notice while we complete the investigation.

Exhibit B

# BUILDING TECHNOLOGY ENGINEERS
## GRIEVANCE FORM

**EMPLOYEE**                                    **CLASSIFICATION**

*PAT Politano*

**SENIORITY**

**NATURE OF GRIEVANCE**

*Terminated without Just Cause*

**Clause of Contract Violated, Article (s)** _____
**and other relevant provisions of the Agreement.**          **(Please fill in)**

**Settlement Desired**

**DATE**                                        **Signature of Employee**

**Disposition of Grievance** _____

**DATE**                                        **Signature**
                                                **Company Representative**

*8·25-04*

**G R I E V A N C E   N O.**                    **Signature**
                                                **Union Representative**

### T R I P L I C A T E   C O P I E S

*Exhibit C*

%JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

Pasquale S. Politano

**(b)** County of Residence of First Listed Plaintiff ___Suffolk___
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)  Frank J. Teague
Frank J. Teague & Associates, One Liberty Sq.
4th Fl. Boston, MA 02109 (617) 350-7700

## DEFENDANTS

Building Technology Engineers,
Inc. and National Conference of Firemen and
Oilers, SEIU, Local Union No. 3 of Boston

County of Residence of First Listed Defendant ___Suffolk___
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)  05-11109W

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☒ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
another district
(specify)

☐ 6   Multidistrict
Litigation

☐ 7   Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
29 U.S.C., Section 142 (1) and (2) and Section 185 (a)

Brief description of cause: Suit by employee/union member against employer for breach of
collective bargaining agreement and against union for breach of duty of

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**   $75,000
fair representation

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE                                   DOCKET NUMBER

DATE   5/24/05

SIGNATURE OF ATTORNEY OF RECORD   Frank J. Teague

## FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)___Pasquale S. Politano v. Building Tachnology Engineers, Inc._____

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   [ ]  I.    160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

   [X] II.    195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
              740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

   [ ]  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.

   [ ]  IV.   220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.

   [ ]  V.    150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   None_____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                           YES [ ]     NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

                                                           YES [ ]     NO [X]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                           YES [ ]     NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                           YES [ ]     NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                           YES [X]     NO [ ]

   A.  If yes, in which division do all of the non-governmental parties reside?

       Eastern Division [X]      Central Division [ ]      Western Division [ ]

   B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

       Eastern Division [ ]      Central Division [ ]      Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                                                           YES [ ]     NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME ____Frank J. Teague, Esq._____
ADDRESS _Frank J. Teague & Associates, One Liberty Square, 4th Floor Boston, MA 02109
TELEPHONE NO. _(617) 350-7700_____

(CategoryForm.wpd - 5/2/05)