UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PASQUALE S. POLITANO,         )<br>         Plaintiff         )<br>                                                   )<br>        v.         )<br>                                                   )<br>BUILDING TECHNOLOGY ENGINEERS,)<br>INC. and NATIONAL CONFERENCE OF  )<br>FIREMEN AND OILERS, SEIU, LOCAL   )<br>UNION NO. 3 OF BOSTON,         )<br>         Defendants         )<br>                                                   ) | CIVIL ACTION NO. 05-11109-WGY |

**FIREMEN & OILERS LOCAL 3, NCFO, S.E.I.U.'S**
**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

Plaintiff alleges that he was wrongfully terminated from his employment at Boston's Prudential Center by defendant Building Technology Engineers, Inc. ("B.T.E." or "Employer") and that defendant Firemen & Oilers Local 3, NCFO, S.E.I.U. ("Local 3" or "Union") breached its duty to fairly represent him by failing to properly investigate and arbitrate his termination grievance. His hybrid claim against the Employer and Union arises under Section 301 of the Labor Management Relations Act, 29 U.S.C. §185.

**II.     SUMMARY JUDGMENT STANDARD**

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ . P. 56. If this showing is made, by drawing upon the pleadings, discovery and affidavits of record, it is up to the non-moving party, here the plaintiff, to produce evidence

beyond mere allegations that can meet the non-moving party's burden of persuasion at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In this case, where plaintiff has alleged that Local 3 breached its duty of fair representation by declining to arbitrate his grievance, the Court must determine whether the Union's decision was "truly arbitrary, discriminatory, or in bad faith based on the facts at the time of the decision." Newbanks v. Central Gulf Lines, 64 F. Supp. 2d 1, 5 (D. Mass. 1999). The Union need not prove the absence of disputed facts as to the reasons for the termination of plaintiff's employment at the Prudential Center. Rather, for purposes of the Union's summary judgment motion, "the material facts . . . relate only to whether the union's decision not to arbitrate was arbitrary, discriminatory or in bad faith. Thus, summary judgment must issue unless plaintiff offers some evidence that the 'handling of the grievance procedure itself' was 'materially deficient." Id. (quoting Early v. Eastern Transfer, 699 F.2d 552, 556 (1st Cir. 1983)); Mensah v. Newton Buying Corp., 927 F. Supp. 518, 522 (D. Mass. 1996)). The plaintiff cannot meet this burden.[1]

### III.  ARGUMENT

#### A.  THE UNION ADEQUATELY INVESTIGATED AND PROCESSED PLAINTIFF'S GRIEVANCE

The duty of fair representation requires that a union conduct "at least a 'minimal investigation' into an employee's grievance," Emmanuel v. Teamsters Local 25, 426 F.3d 416, 420 (1st Cir. 2005) (quoting Garcia v. Zenith Elec. Corp., 58 F.3d 1171, 1176 (1st Cir. 1995)). Under this standard, "only an 'egregious disregard for union members' rights constitutes a breach of the union's duty' to investigate." Id. (quoting Castelli v. Douglas Aircraft Co., 752

---

[1] Because in a hybrid Section 301 suit, the plaintiff must prove both that the union breached its duty of fair representation and that the employer breached the collective bargaining agreement, the absence of a triable issue against Local 3 will also entitle B.T.E. to summary judgment. See Vaca v. Sipes, 386 U.S. 171, 186-187 (1967).

F.2d 1480, 1483 (9th Cir. 1985)). A union is entitled to substantial deference with respect to the manner in which it pursues a grievance. Id.

In his Complaint, plaintiff alleges that the Union breached its duty of fair representation by: (1) failing to properly investigate the reasons provided by B.T.E. for his removal from the Prudential Center, i.e., that he had procured cleaning services for Krispy Kreme in exchange for free doughnuts; (2) failing to investigate or obtain documentation for B.T.E.'s allegation that his removal had been requested by Boston Properties; 3) failing to investigate whether B.T.E. had intentionally provided false information to Boston Properties; (4) failing to follow the "past practice" of requiring written documentation from B.T.E. of such requests; (5) failing to enforce the just cause termination and layoff provisions of the collective bargaining agreement; and (6) failing to arbitrate his grievance.

The undisputed facts demonstrate that the Union conducted a fair and reasonable investigation of plaintiff's grievance. On August 25, 2005, a week after Politano was removed from his employment at the Prudential Center, the Union filed a wrongful termination grievance on his behalf. Firemen & Oilers Local 3, NCFO, S.E.I.U.'s Statement of Undisputed Facts (hereinafter "Facts"), Exhibit 7. Shortly thereafter, on September 9, 2005, B.T.E. denied the grievance stating that the plaintiff had been removed from the Prudential Center site at the request if its customer, Boston Properties, and that he had been placed on layoff status. Facts, Exhibit 8. On September 9, 2005, the Union requested documentation from B.T.E. regarding the reasons why this action had been taken. Facts, Exhibit 9. B.T.E. provided documents responsive to the Union's request on October 1, 2005, including investigative reports in which managers of Janitronics and Krispy Kreme alleged that plaintiff had procured cleaning services for Krispy Kreme from Janitronics employees in exchange for free doughnuts. Facts, Exhibit 10. The

3

Union nonetheless continued to process the plaintiff's grievance through a Step III meeting with B.T.E. managers. At that meeting, held on October 12, 2005, the Union advocated for the plaintiff and, according to Politano, presented his position to B.T.E.'s representatives in the manner he desired. Facts, Par. 27. At the third step meeting, B.T.E. produced photographs from the Prudential Center's security cameras showing Politano carrying boxes of doughnuts while on the job. Ken Stack, the Employer's Project Manager at the Prudential Center, explained that as a result of the information that had come to light about Politano's involvement with Krispy Kreme and Janitronics, Boston Properties had verbally requested Politano's removal from the site.

Once the Union learned that Politano had not been terminated, but was instead removed at the request of the customer, its investigation focused on learning the circumstances of his removal. The information provided by B.T.E. in the course of the grievance process, including the documentary evidence received on October 1, 2004, and the information provided at the Step 3 grievance meeting, was sufficient to establish that there were non-frivolous reasons why Boston Properties no longer would permit Politano on the premises.

Plaintiff claims the Union had a duty to more thoroughly investigate the reports of his wrongdoing. The settled practice under the B.T.E. - Local 3 collective bargaining agreement, however, permits B.T.E. to remove employees from a work site at the request of a customer. Byrnes Aff., Par. 1. B.T.E. need not establish "just cause" for the removal under the contract's disciplinary provisions. Byrnes Aff., Par. 4. Prior to his own removal from the Prudential Center, Politano was aware of B.T.E.'s contractual right to remove employees from a work site at the customer's request. Facts, Par. 17. Moreover, he knew of employees who had been removed from the Prudential Center for this reason. Facts, Par. 19. Contrary to what he alleges in his Complaint, plaintiff has produced no evidence of a "past practice" that requires that such

4

customer requests take written form.  Given that B.T.E. had the right to remove Politano, and given the evidence the Union obtained of the reason for his removal, Local 3 was not obligated to further investigate the details of his alleged involvement in the "doughnuts for cleaning" scheme.[2]

Politano argues that the Union should have probed the possibility that B.T.E. provided false information to Boston Properties to elicit a request for removal.  No evidence has come to light to substantiate this suspicion.  In any event, a union does not breach its duty of fair representation simply because it dos not conduct as thorough an investigation as the grievant may want.  See Emmanuel, supra at 421; Garcia v. Zenith Elec. Corp., 58 F.3d 1171, 1177-1178 (7th Cir. 1995); Castelli, supra at 1483; Findley v. Jones Motor Freight, 639 F.2d 953, 956-961 (3d Cir. 1981).  Nor can Politano support his fair representation claim with allegations that the Union did not perform its investigative duties to his personal satisfaction.  See Vaca v. Sipes, 368 U.S. 171, 190-193 (1967) ("The only burden upon a union is to act fairly and in good faith, something considerably less than a duty of support measured solely with reference to the member.")  Even if the plaintiff could show negligence on the Union's part, "the First Circuit has stated that 'mere negligence or error is not enough' to establish a breach of the duty of fair representation."  Mensah, supra at 523 (quoting Macknight v. Leonard Morse Hospital, 828 F.2d 48, 50 (1st Cir. 1987)).

Politano also insists that the Union violated its duty of fair representation by failing to enforce the contract's layoff and recall provisions with respect to his search for another position with B.T.E.  He maintains that he was entitled to be recalled into an available job and that the

---

[2] The Union's investigation verified that B.T.E. received complaints about Politano from both Krispy Kreme and Janitronics.  Furthermore, by his own admissions, Politano helped to arrange cleaning services from Krispy Kreme although he knew such services were not normally provided by Janitronics.  Facts, Par. 8-9.  He also admitted that

5

Union breached its duty by not securing a position for him.  To begin with, plaintiff never submitted a grievance against B.T.E. alleging such violations of the contract's seniority or layoff provisions.  Byrnes Aff., Par. 18.  His August 25, 2005, grievance was limited to the termination of his employment at the Prudential Center.  He does not allege that he asked the Union to file a subsequent grievance and was rebuffed.  Without resort to the grievance procedure, or evidence that pursuit of a grievance would have been futile, this aspect of Politano's fair representative claim is barred.  See Podobnik v. United States Postal Service, 409 F. 3d 584, 594-595 (3d Cir. 2005) (plaintiff's failure to exhaust the grievance process before bringing hybrid section 301 actions is not excused where he did not provide evidence that pursuing a grievance would have been futile).

     In any event, plaintiff has not identified any conduct by the Union that was in disregard of his layoff and seniority rights.  The Union does not operate a hiring hall or job referral system; laid-off employees apply directly to B.T.E. for open positions.  Facts, Par. 22.  While the contract requires, in Article XXV, that B.T.E. give preference in hiring to laid-off employees, according to their seniority, it also states in Article III that recall rights are contingent on the employees' qualifications for the job.  Facts, Exhibit 1.  Politano focused his job search on finding an MT-1 position but did not hold the Massachusetts Refrigeration License required for most of B.T.E.'s MT-1 jobs.  Facts, Par. 34-35.  He admits that the Union's representatives tried to assist him in finding another B.T.E. position and were in frequent contact with him during his job search.  Facts, Par. 30.  He also acknowledges that the Union contacted B.T.E. to find openings for him and that as a result of the Union's intervention, he was interviewed at other sites.  Facts, Par. 31-32.  In light of the assistance the Union provided to him, his failure to

---

once Janitronics ceased cleaning the floors of Krispy Kreme, the amount of free doughnuts he had been receiving was reduced.  Facts, Par. 11.

produce evidence that he was denied positions for which he was fully qualified; and his failure to grieve, Politano cannot establish that the Union's conduct toward him was arbitrary, discriminatory, or in bad faith.

The undisputed evidence demonstrates instead that the Union adequately investigated the plaintiff's grievance and competently represented him in the grievance process. Politano has pointed to no proof of bias or hostility towards him on the part of the Union nor can he show that the handling of his grievance was "materially deficient." Mensah v. Newton Burying Corp., 927 F. Supp. 518 (D. Mass. 1996). Politano's claim that the Union breached its duty to fairly investigate his grievance cannot withstand summary judgment.

### B. THE UNION DID NOT BREACH THE DUTY OF FAIR REPRESENTATION BY DECLINING TO TAKE PLAINTIFFS' GRIEVANCE TO ARBITRATION

Plaintiff's primary charge against the Union is his claim that Local 3 breached its duty of fair representation by deciding not to take his grievance to arbitration. In his view, B.T.E. deceptively characterized his termination as a layoff after trumping up the request by Boston Properties to have him removed from the property. Plaintiff points to his lack of success in finding work at other B.T.E. sites as proof of his theory. Based upon his certainty that his termination grievance had merit, Plaintiff contends that Local 3 had a legal duty to proceed to arbitration. It is, however, "well settled that a union does not have an affirmative duty to pursue every grievance that comes before it." Mensah, supra at 522. See also Ayala, supra at 345 ("[D]isaffected employees do not possess an absolute right to have their union shepherd a complaint through the grievance process to its bitter end."); Newbanks, supra at 4 (duty of fair representation is not a "straight jacket" which forces unions to pursue grievance remedies to arbitration.) While Politano "may have been disappointed with the Union's refusal to take his

7

grievance to arbitration, that 'disappointment without more, does not give rise to a claim against the [u]nion for the breach of its duty of fair representation." Mensah, supra at 523 citing Williams v. Sea-Land Corp., 844 F.2d 17, 21 (1st Cir. 1988).

Politano does not and cannot claim that Local 3 gave his grievance perfunctory consideration. The decision not to pursue the grievance to arbitration was made by the Union's Executive Board only after meeting with Politano and providing him with an opportunity to fully present his case and answer questions. Based on the language in the collective bargaining agreement permitting the removal of employees at a customer's request, the past practice regarding B.T.E.'s exercise of this right, and the information the Union had obtained in the course of its investigation of Politano's grievance, the Executive Board concluded that he was unlikely to prevail in an arbitration. Facts, Par. 38. Politano was promptly informed of the Union's decision the next day. Byrnes Aff., Par. 39.

Politano insists that the Union's evaluation of the merits of his grievance was wrong. He does not deny that the contract permits B.T.E. to remove employees at a customer's request or that other employees have left the Prudential Center for this reason. He cannot point to any cases in which the Union has arbitrated B.T.E.'s removal of an employee at a customer's request. Nonetheless, Politano maintains that the Union breached its duty of fair representation by declining to arbitrate his grievance. While he disagrees with the Union's decision, plaintiff falls far short of showing that "'in light of the factual and legal landscape at the time of the union's action,' its behavior is so far beyond a 'wide range of reasonableness' that it is irrational." Newbanks, supra at 4 (quoting Air Line Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 67 (1991). See also Miller, supra at 11 (failure to take grievance to arbitration breaches duty of fair representation only when union's otherwise good faith decision is arbitrary.)

8

In duty of fair representation cases, courts "may not substitute their own view for those of the union." Miller v. United States Postal Service, 985 F.2d 9, 12 (1st Cir. 1993).  See also Emmanuel, supra at 1349-1350 ("It is for the union, not the courts, to decide whether and in what manner a particular grievance should be pursued.")  A union is allowed "great latitude in determining the merits of an employee's grievance and the level of effort it will expend to pursue it." Id.  Nonetheless, plaintiff is asking the Court to second guess the Union's interpretation of its collective bargaining agreement, not because there is evidence that the Union's decision was arbitrary, discriminatory, or motivated by bad faith, but simply because he believes the Union erred.  Even if this were so, however, the Union would not be in dereliction of its duty of fair representation.  See Emmanuel, supra at 421 ("A union does not act arbitrarily merely because it errs in interpreting a provision of a collective bargaining agreement.")

A Union's error in judgment, even when attributable to its own negligence, does not constitute the type of egregious disregard for its members' rights that breaches the duty of fair representation.  See Newbanks, supra at 5 (negligence or erroneous judgment does not meet the high threshold of arbitrary, discriminatory, or in bad faith); Miller, supra at 12 (union's mere negligence or erroneous judgment will not constitute breach of duty of fair representation).  See also Mensah, supra at 523 (same).

In this case, it is undisputed that the Union filed and processed plaintiff's grievance; requested and obtained relevant documents; represented him to his satisfaction at the Step III grievance meeting with B.T.E.; assisted him in his efforts to find another position; gave him a full and fair opportunity to present his case to the Union's Executive Board before it reached a decision; and promptly notified him of the Union's decision not to proceed to arbitration.  At each step, the Union represented Politano in a fair and reasonable manner.  His allegations that

the Union acted arbitrarily, discriminatorily or in bad faith are simply allegations, nothing more. As such, plaintiff's claims do not satisfy his burden under Celotex, supra at 322. In the absence of evidence that a jury could reasonably find for plaintiff, summary judgment is proper. Ayala, supra at 346.

### IV.  CONCLUSION

For the foregoing reasons, Local 3 respectfully requests that its Motion for Summary Judgment be allowed.

                Respectfully submitted,

                LOCAL 3, NATIONAL CONFERENCE
                OF FIREMEN AND OILERS, S.E.I.U.,

                By their attorneys,

                /s/ Ira Sills
                Ira Sills, Esquire
                BBO #462220
                Shelley B. Kroll, Esquire
                BBO #544449
                Segal, Roitman & Coleman
                11 Beacon Street
                Suite #500
                Boston, MA  02108
                (617) 742-0208
                isills@segalroitman.com

Dated:  May 15, 2006

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and a paper copy will be mailed upon Gregory W. Homer at Drinker, Biddle & Reath, LLP, 1500 K Street, N.W., Suite #1100, Washington, D.C. 20005 as a non registered participant this 15th day of May, 2006.

                /s/ Ira Sills
                Ira Sills, Esquire

SBK/ts
IS 3401 05-196/memo-suppmotion-sj.doc